Beatty, Appellant, *v.* Hoff.

174

Argued March 22, 1955. Before Stern, C. J., Stearne, Jones, Bell, Chidsey, Musmanno and Arnold, JJ.

*Saul J. Bernstein*, with him *William A. Watson*, for appellants.

*Lee C. McCandless*, for appellees.

Opinion by Mr. Justice Chidsey, May 24, 1955:

At 11 P.M. on May 26, 1949, Carl R. Hoff was operating a 1940 Buick sedan belonging to his father, Charles W. Hoff, and became involved in a three-car collision on Highway Route 68 in Butler County, Pennsylvania. The father was not in the car at the time of the accident. The other two cars were operated by James F. Beatty and Robert H. Watson, respectively. In separate actions of trespass brought by Beatty and Watson against Carl R. Hoff, Beatty recovered a verdict in the amount of $5,584.81 and Wat-

son a verdict of $1,499. Judgments were entered upon these verdicts.

Charles W. Hoff, the father, had a policy of insurance issued by the appellee, Car & General Insurance Company, Limited, covering the Buick automobile which his son was driving which contained a so-called omnibus clause, which provided: "With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, *provided the actual use of the automobile is by the named insured or with his permission . . .*". (Emphasis supplied).

Beatty and Watson issued attachment executions on their respective judgments, naming the appellee insurance company as garnishee. In answer to interrogatories the garnishee denied liability, alleging that Carl R. Hoff was not driving with the permission of Charles W. Hoff, the insured, at the time of the accident and therefore was not covered by the policy. The two cases were consolidated and tried before the same jury which rendered verdicts in favor of Beatty and Watson in the respective amounts of their judgments. The garnishee filed a motion for judgment non obstante veredicto in each case which, after argument, was granted, and Beatty and Watson appeal from the judgments respectively entered in favor of the garnishee. The cases were jointly argued before this Court by the same counsel and they will be together considered and disposed of in this opinion.

The sole question for determination is whether the finding of the jury, upon which its verdict was necessarily predicated, that Carl R. Hoff had either express or implied permission of his father, the owner, to drive

the automobile at the time of the accident, is suffi-ciently supported by the evidence. The court below concluded it was not.

On behalf of the garnishee-appellee evidence was adduced of a signed statement by Carl R. Hoff (who was in Korea at the time of the trial) in which he stated that he was using the car without his father's permission; that he had taken the keys to the car with-out his father's knowledge, and that he did not have an operator's license. There was also introduced a signed statement by the father (who died between the date of the accident and the trial) to the effect that he had never permitted Carl to drive his car and that he did not know his son had taken the car on this oc-casion. Mayme A. Hoff, Carl's mother, testified that her husband kept the keys to the car in his coat which was "hanging up in the kitchen" when Carl apparently took the car; that her husband was then in his bed-room sleeping; that she never knew of Carl driving the car nor, to her knowledge, was his father aware of it. Mrs. Hoff also testified that prior to the acci-dent Carl had an old car which he drove without an operator's license; that she and her husband knew this and didn't prohibit or admonish him.

The evidence relied on by the appellants, herein-after reviewed, consisted of the testimony of witnesses directed toward showing a course of conduct estab-lishing such acquiescence by the father in the son's use of the car as to imply its permissive use at the time of the accident.

In *Brower, to use v. Employers' Liability Assurance Company, Ltd.*, 318 Pa. 440, 177 A. 826, Mr. Justice KEPHART, speaking for the Court, at p. 444 said: "For liability to attach in any event under an omnibus clause of this type, the operator must be shown to have ob-tained possession of the car lawfully and with the per-

mission, express or implied, of the named assured; if there is a complete lack of permission to use the car for any purpose, the operator is clearly not within the coverage of the policy: Morin v. Travelers Ins. Co., 85 N. H. 471, 160 Atl. 482; Globe Indemnity Co. v. Nodlere, 69 Fed. [2d] 955. The necessary permission may be in the form of express or implied affirmative consent or it may result by implication from the relationship of the parties or a course of conduct in which the parties have mutually acquiesced: Maryland Casualty Co. v. Ronin, 37 Fed. [2d] 449; see Kazdan v. Stein, 26 Ohio App. 455, 160 N. E. 506, affirmed in 118 Ohio 217, 160 N. E. 704.". In *Kazdan v. Stein,* thus cited in the *Brower* case, it is stated: "Whether a consent is express or implied depends upon the conduct of the party whose consent must be had. Whatever may be the act, circumstance, or fact, in order to recover under the terms of the agreement, there must be a connection made with the conduct of the party whose consent, either express or implied, is necessary. Thus there may be acts, circumstances, and facts, such as the continued use of the car, but unless they attach themselves in some way to the acts of the party whose consent must be had there can be no implication of consent arising, because consent signifies some fact or circumstance proceeding from the party who must consent in order to make the act valid. In other words, there must be a nexus between the acts and the voluntary action on the part of him who must consent. The implication, in order to have legal significance, must have the element of mutuality, because in implied consent it is just as necessary to show mutuality as it is in express consent, and as to the latter there is no question that a mutuality of agreement must exist. It is just as necessary in implied consent.".

Appellants contend, as stated in their brief, that the permission necessary to bring Carl Hoff under the provision of the omnibus clause as an additional insured is established first, by the relationship of father and son without more, and secondly, by a course of conduct in which the parties mutually acquiesced. With respect to the first contention, the omnibus clause contains no exception in the case of a family relationship to the requirement of the assured's permission, and does not permit such a construction. We cannot rewrite the policy. To pass upon the second contention we must, in view of the jury's verdict, reject all of the testimony favorable to the appellee and consider the testimony and reasonable inferences therefrom in the light most favorable to the appellants: *Coradi v. Sterling Oil Company*, 378 Pa. 68, 105 A. 2d 98; *Acchione v. Acchione*, 376 Pa. 36, 37, 101 A. 2d 642. There was testimony that Charles W. Hoff, the father, never owned more than one car at a time; that he was the owner first of a light gray Lafayette car and later of the insured Buick involved in the accident. It does not appear when he acquired the latter. Mrs. Effie Aiken who was in the Buick car at the time of the accident on May 23, 1949, testified to the effect that Charles Hoff had acquired it in that year. The policy of insurance in question covered the period from January 29, 1949 to January 29, 1950. Carl Hoff lived at his father's home near Slippery Rock. Mrs. Effie Francis who lived about "a half mile or quarter of a mile" from the Hoff home, testified that she had twice seen Carl driving a Buick car which "someone" told her was his father's car; that she had seen the father drive the same car. She could not fix the time of these occasions, whether it was a year or two years before the accident. She testified that she knew that Carl had a car which she had seen him drive "several times",

but stated that when she saw him driving the Buick, he did not have a car of his own. Joseph Lukawich who lived next door to one Bill Brown, a brother-in-law of Carl Hoff, testified that on week-ends during the six months before the accident he had seen Carl drive a Buick into Brown's place to pick up Brown with whom he paled around. He could not say how many times this happened. The testimony of Mrs. Francis and Lukawich was the only evidence tending to establish Carl's use of the insured Buick car. Three other witnesses testified that they had seen Carl on one or more occasions driving the Lafayette car owned by his father prior to the latter's acquisition of the Buick. There was also testimony that on the evening of the accident, in order to pick up companions, Carl was required to pass the Hoff residence three times, but no evidence that the father or any member of the family was aware of this. The testimony of all of plaintiff's witnesses was vague and indefinite and, as the court below stated in its opinion, ". . . scanty in its nature and leaves much to be desired.". More important, assuming that the testimony sufficiently established the son's occasional use of the insured Buick, there was no proof whatsoever that its use on such few occasions (or on the night of the accident) was with the father's knowledge. Nor was the use sufficiently frequent to impute knowledge to the father.

In *Traders & General Ins. Co. v. Powell*, 177 F. 2d 660, cited and relied on by appellants, where a similar "omnibus clause" was under consideration, the evidence of permissive use of a truck by the employe of its owner was held sufficient by a majority of the Court of Appeals of the 8th Circuit, one judge dissenting. There the owner regularly permitted the employe to take home for the night and over week-ends a truck with trailer attached, used in the employer's lumber busi-

ness. The employe was permitted to keep the keys to the truck at all times and the case was replete with evidence not only that the employe notoriously used the truck with the trailer detached, for his own personal use and pleasure, but that on numerous occasions with friends as passengers, he passed the owner under circumstances where the latter must have seen him.

In *Maryland Casualty Co. v. Ronan et al.,* 37 F. 2d 449, cited in the *Brower* case, supra, a corporation purchased a salesman's car for its only salesman who used it almost exclusively. Besides using it in and about the business of his employer, it was the salesman's practice to use it in and about his own private affairs, at times with the knowledge and permission of the officers of the company and at other times without their knowledge or permission. When any of the officers were available and he wanted to use the car for pleasure or to make personal calls or visits, he would ask their permission which was always given. Sometimes, and often on Sunday, it would happen that none of the officers would be at the office when he desired to use the car for his personal accommodation. It was then his practice to use it without their knowledge or permission, always telling them of it later, and there was never any objection made. Under these circumstances it was held that permissive use could be implied through usage and common practice.

In both of the foregoing cases the evidence abundantly established a course of conduct of such character and duration that knowledge of the use of the car involved could be imputed to the owner and therefore the implication of consent. This clearly distinguishes them from the instant case where the evidence, when considered most favorably to the appellants, falls far short of establishing a course of conduct from which knowledge and permissive use could be implied.

Judgments affirmed.

Mr. Justice JONES is of the opinion that the evidence justified the jury's finding that the minor operator of the injury-inflicting automobile was driving it with permission of his father, the owner of the automobile.