UNITED STATES FIDELITY AND
GUARANTY COMPANY

v.

George BILYI.

Civ. A. No. 22361.

United States District Court
E. D. Pennsylvania.

July 28, 1958.

Charles F. G. Smith, of Ambler & Detweiler, Philadelphia, Pa., for plaintiff.

Stanley M. Greenberg, of Ochman & Greenberg, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

Plaintiff, United States Fidelity and Guaranty Company, seeks a declaratory judgment, holding that it is not liable under the policy of insurance written by it covering a certain 1949 Ford truck and Fidelity Roofing and Siding Corporation, as owner thereof, when George Bilyi was driving this truck on March 3, 1956, at the time an accident occurred.

### I.  Findings of Fact

The court makes the following Findings of Fact:

344

1. Plaintiff, United States Fidelity and Guaranty Company, is an insurance company existing under and by virtue of the laws of the State of Maryland which maintains an office in Philadelphia, Pennsylvania.

2. Defendant is a citizen and resident of the Commonwealth of Pennsylvania.

3. Plaintiff issued its Automobile Liability and Physical Damage Policy BO13342 (Exhibit P-1), effective December 7, 1955, to December 7, 1956, to Fidelity Roofing and Siding Corporation, 1919 Germantown Avenue, Philadelphia, Pa., as the named insured, covering several vehicles, one of which was a 1949 Ford ¾-ton pickup truck, Serial No. 98RY23662, owned by the named insured.

4. The insuring agreements of said policy contain, among other things, the following provision:

"III Definition of Insured

"(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'Insured' includes the Named Insured * * * and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the Named Insured or such spouse or with the permission of either. * * *"

5. The name of the defendant, George Bilyi, does not appear in said policy of insurance as a "Named Insured."

6. George Bilyi, in March 1956, was an employee of the Fidelity Roofing and Siding Corporation and sometimes drove trucks belonging to the corporation while at work.

7. Prior to March 2, 1956, the defendant had been permitted to use the trucks of the assured after business hours only as follows: twice to do roofing work on his own after hours (he returned the trucks to the garage immediately afterward) and once to help a Hawaiian friend move.

8. A few days prior to March 2, 1956, defendant was given permission to take the Ford truck to a repair shop to get its exterior painted and to drive it to work the next day.

9. On Friday, March 2, 1956, he took the truck from work with instructions from his employer to take it to have the interior of its cab painted and to return it Monday morning.

10. No request was made by the defendant on March 2, 1956, or any time prior thereto, that he be permitted to use said vehicle for his own use.

11. The assured had never given the defendant permission to use trucks of the company for any non-business purposes, except as stated in Finding of Fact No. 7.

12. The defendant drove the truck from assured's place of business on Friday, March 2, 1956, and took it to the Orianna Body Works (915 North Orianna Avenue, Philadelphia) on March 3, 1956, for the purpose of having it painted.

13. While said vehicle was at the Orianna Body Works shop on March 3, 1956, defendant helped to paint it.

14. While driving two of his companions to a section of Philadelphia at about 11:15 P. M. on March 3, 1956, the defendant was involved in an accident which caused personal and property damage.

15. Mr. Bilyi testified substantially as follows: In the early evening of March 3, 1956, he picked up the truck at the repair shop and drove it to the home of an acquaintance (Kali), which was neither on the way to his home nor on the way to the assured's place of business. En route to the home of the acquaintance, he picked up two friends and the accident occurred while he was returning them to the corner (4th and George Streets, Philadelphia) where he picked them up and before he had started for his home. At no time during March 3, 1956, did he go to the assured's place of business.

16. At the time of said accident, defendant's actual use of the truck was not with the permission of the owner of said truck.

17. Paragraphs 1, 2, 3, 4 with the elimination of (a) the word "later" in the fourth line and (b) all words after "ride" in that line, and 5 of plaintiff's Requests for Findings of Fact and paragraphs 1–5 and 15 of defendant's Requests for Findings of Fact are adopted as Findings of Fact of the trial judge.

## II. Discussion

On Friday, March 2, 1956, the assured, Fidelity Roofing and Siding Company, gave defendant permission to drive its truck to a repair shop in order that it could be painted. The truck was to be driven back to the company's premises on Monday, March 5, 1956.

On Saturday evening, March 3, 1956, the defendant took the truck from the repair shop and used it for personal pleasure. While doing so, he was involved in an accident.

The issue in this case is whether the use of the car was with the permission of the insured.[1] Defendant claims he was an "insured" under the automobile liability policy in force between plaintiff and his employer for the following reasons:

1. He intended to return the car to the assured after his personal pleasure ride; therefore, he was acting within the express permission granted by the assured.

2. He had been given implied permission by the assured to use the truck for pleasure.

Plaintiff's position is that the actual use of the vehicle at the time of the accident was not with the permission of the assured and, therefore, it is not liable.

■ The policy in question having been countersigned and delivered in Philadelphia, this case is governed by the law of Pennsylvania.[2]

In construing provisions in automobile liability policies similar to the instant one, which affords coverage to third persons only if the actual use of the vehicle is with the permission of the named insured, Pennsylvania courts have defined "permission" as permission to use the vehicle in a specified manner and for a specified purpose.[3] "Actual use" in said provisions means the particular use at the time in question.[4] The late Justice Drew stated in his concurring opinion in Brower v. Employers' Liability Assurance Company, Ltd., 1935, 318 Pa. 440, at page 449, 177 A. 826, at page 830:

"The 'use or operation * * * with the permission of the named assured' refers to the time of the casualty and not to the time of granting consent. * * * Where the owner allows another the use of his car for a specific purpose, restriction to such purpose is clearly implied. Express permission for a given purpose does not imply permission for all purposes."[5]

1. See National Grange Mutual Liability Co. v. Metroka, 3 Cir., 1958, 250 F.2d 933, 934.

2. Faron v. Penn Mutual Life Ins. Co., 3 Cir., 1949, 176 F.2d 290.

3. E.g. Laroche v. Farm Bureau Mutual Automobile Ins. Co., 1939, 335 Pa. 478, 482, 7 A.2d 361. Permission by the insured owner may be express or implied. Brower v. Employers' Liability Assurance Company, Ltd., 1935, 318 Pa. 440, 177 A. 826.

4. Conrad v. Duffin, 1945, 158 Pa.Super. 305, 309, 44 A.2d 770; Laroche v. Farm Bureau Mutual Automobile Ins. Co., supra. The Court of Appeals for the Third Circuit, in interpreting a similar clause in the light of Pennsylvania decisions, recently stated: "Where * * * there has been a deviation at the time of the accident from the particular use for which permission was given the user at that time does not come within the policy definition as an additional insured." Maryland Casualty Company v. Marshbank, 3 Cir., 1955, 226 F.2d 637, 640.

5. This language has been cited with approval in Freshkorn v. Marietta, 1942, 345 Pa. 416, at page 419, 29 A.2d 15. See, also, Aetna Casualty & Surety Co. v. De Maison, 3 Cir., 1954, 213 F.2d 826, 831; Lumbermens Mut. Cas. Co. v. Sutch, 3 Cir., 1952, 197 F.2d 79, 82.

■ Using the above definitions, defendant did not have permission to use the vehicle in the way, and at the place, he was using it when the accident occurred. The express permission he received extended only to taking the truck to the repair shop and returning it to the assured. He attempts to bring the use at the time of the accident within the express permission granted because he intended to return it to the company when the pleasure ride was over.

Even if this was his intention,[6] the devious route taken would exclude coverage under the policy. He was granted permission to drive the vehicle from the repair shop to the company's premises. Instead of doing that, he drove it from the repair shop to visit an acquaintance, picking up some friends on the way. When the accident happened, he was on his way to deposit these friends where he had picked them up (see Findings Nos. 14 and 15). His claim that he was driving under the express, granted permission is rejected.[7]

■ Defendant's alternate claim, that he was impliedly permitted to drive the car as his own, is not supported by the facts as found.[8] His employer testified that he had no knowledge that the defendant ever used the truck for any personal purposes. Defendant stated that his employer should have known it was being used for personal purposes because of the amount of gas used in it, but he gave no specific testimony as to the amount of gas used on any specific occasion. The facts do not warrant a finding that the assured gave implied permission to his employee to use the car as his own.[9] The evidence falls far short of establishing a course of conduct of such character and duration that knowledge of the use of the truck at the time of the accident could be imparted to the owner, implying consent.[10]

The late Justice Chidsey used the following applicable language in Beatty v. Hoff, 1955, 382 Pa. 173, at page 179, 114 A.2d 173, at page 175:[11]

"Assuming that the testimony sufficiently established the son's occasional use of the insured Buick, there was no proof whatsoever that its use on such few occasions (or on the night of the accident) was with the father's knowledge. Nor was the use sufficiently frequent to impute knowledge to the father."

Bilyi had no permission, express or implied, to be driving the insured vehicle for pleasure at the time of the accident. Plaintiff, therefore, is not liable under the terms of the above-mentioned insurance policy.[12]

6. The trial judge doubts that the defendant actually intended to return the truck to his employer after his pleasure ride, considering the extremely late hour.

7. See Brower v. Employers' Liability Assurance Company, Ltd., 1935, 318 Pa. 440, 177 A. 826.

8. Defendant testified that he does not remember if the employer gave him permission to use the truck for his personal purposes on this occasion. Defendant places undue weight on his continued employment by the assured in view of the arrangement that the damages to the truck in the accident were to be taken out of his salary.

9. In an appropriate case, the trial judge recognizes that permission may result from express or implied affirmative consent or by implication from the relationship of the parties or by a course of conduct in which the parties have mutually acquiesced. See Conrad v. Duffin, 1945, 158 Pa.Super. 305, 309, 44 A.2d 770.

10. Compare Beatty v. Hoff, 1955, 382 Pa. 173, 114 A.2d 173, with Traders & General Ins. Co. v. Powell, 8 Cir., 1949, 177 F.2d 660, and Maryland Casualty Co. v. Ronan, 2 Cir., 1930, 37 F.2d 449, 72 A.L.R. 1360.

11. The case involved the interpretation of an insurance policy provision similar to Provision III in the instant case. There was testimony that the person who had had the accident (the son) had been seen driving his father's car on several occasions. The court held that the facts did not establish a course of conduct from which knowledge and permissive use could be implied.

12. Defendant's able Memorandum of Law is being placed in the Clerk's file to show his position. Plaintiff's thorough brief will also be placed in the Clerk's file.

### III. Conclusions of Law

The trial judge adopts paragraphs 1, 2, 3 with subparagraph c reworded to read "The use of the truck in the evening hours for social purposes at a time when defendant was drinking intoxicating liquids," 4, 5, 6, and 7 of plaintiff's requested Conclusions of Law as Conclusions of Law of the court. Also, the trial judge concludes that the court has jurisdiction of the parties and the subject matter of this action.

Defendant's Requests for Conclusions of Law are denied insofar as they are inconsistent with the foregoing Conclusions.

A declaratory judgment will be entered in the form submitted by plaintiff at the trial.